THE SCREW MOWER AND REAPER COMPANY *vs.* METTLER
AND REESE.

1. The equity upon which the right to an injunction to restrain proceedings at law upon a note rests, being distinctly denied by the answer, and the complainants having a defence, which, if sustained at law, would be good, and which he may show in the action at law, injunction dissolved.

2. It is also a good ground for dissolving the injunction in such a case, that there is great reason to believe that the complainants' conduct towards the defendant, in regard to the note, has been such as to estop them from setting up their defence in equity, against them.

On motion to dissolve injunction, on bill and answer.

*Mr. J. F. Dumont*, for the motion.

*Mr. J. G. Shipman*, contra.

THE CHANCELLOR.

The complainants' bill is filed to restrain the defendant, Mettler, from further prosecuting a suit at law, begun by him in the Supreme Court against them on a promissory note, made by them on or about the 16th of December, 1873, and dated on that day, for $3500, payable at the Phillipsburg bank, nine months after date, to the order of The Reese, Staats and Melick Manufacturing Company, without defalcation or discount, for value received. That note, they allege, was, by agreement between them and Adam R. Reese, delivered at or about the time when it was made, to their secretary, George Sweeney, now deceased, who was also the secretary of the payees, to be held in escrow. According to their statement, it was, by the agreement, never to be delivered to any one, but was to be retained by the secretary until Reese, who, as they allege, was indebted to The Reese, Staats and Melick Company in the sum of about $4000, of which debt the

complainants were the owners by assignment from that company, should have cancelled fifty shares of his stock in that company, and then it was to be returned to the complainants, who were to credit him with the amount of it on the debt. The complainants allege that Reese had agreed with them to exchange the fifty shares of stock for fifty shares of their capital stock, which they were to sell to a Mr. Miller for $3500, and apply the money to Reese's debt. The Screw Mower and Reaper Company, the complainants, it appears, were, in fact, a new organization of The Reese, Staats and Melick Company, the capital stock of the latter being exchanged for that of the former, and the former company purchasing the assets of the latter. Reese had two hundred and ninety-five shares of the stock of The Reese, Staats and Melick Company. The stock of the new company was of the same amount as that of the old, and held in the same shares, by the same persons. In order to introduce three new stockholders (one of whom was Mettler) into the new company, it was arranged that three of the stockholders should each permit the sale of fifty shares of his stock to one of the three persons above mentioned. Reese, as before stated, owned two hundred and ninety-five shares, and he was to permit the sale of fifty of them to Mettler. That number of shares was, in fact, sold to the latter. They were paid for by Miller, to the new company. Reese, in March, 1874, after that sale, cancelled fifty shares of his stock, receiving nothing in return therefor. The complainants did not give him any credit for the price of the stock sold to Miller. They state that Miller, being unwilling to wait until Reese, whose stock had been levied on for debt, could get it released, made other arrangements, and obtained his stock from others. Nor did the complainants, when Reese cancelled the fifty shares, take up the note, which was then in the secretary's hands. On the 1st of April following, Sweeney, the secretary, to whom Reese was indebted in the sum of $2284.54, in their individual transactions, endorsed the note in the name of The Reese, Staats and Melick Company, to Reese, who endorsed

it in blank, and on the 4th of April, Sweeney delivered it to Mettler as collateral security for the payment of Reese's note to Sweeney, for $2284.54, dated the 1st of April, payable at three months from its date, to Sweeney's order, which he then also delivered to Mettler in exchange for the latter's note, for the same amount, dated on the 4th of April, then lent by Mettler to Sweeney. This arrangement was the means by which Reese and Sweeney raised for the latter the money due to him from the former. Reese's note was not paid at maturity. Mettler renewed his note and brought suit against Reese on the note of the latter, who then paid it and demanded from him the note of $3500. Mettler refused to deliver it to him until he paid $15, or thereabouts, for costs of protest of Mettler's note, lent to Sweeney, and interest on that note and discount on the renewal. The result was an action of trover brought by Reese against Mettler, in which the former obtained judgment in the February Term, 1875, of the Supreme Court, for the amount of the note, with interest. Mettler subsequently brought suit against the complainants, on the note, and the bill in this cause was filed to restrain him from proceeding therein, and an injunction was issued thereon.

Mettler has answered the bill fully. In all matters within his knowledge, he has answered, professedly, according to his knowledge, and as to other matters on information and belief. He denies all notice of the alleged agreement between Reese and the complainants in regard to the note, and all notice that the note was held in escrow, and alleges, in short, that he took it *bona fide* for value, without any notice that it was subject or liable to any defence. The complainants insist that he is not now a *bona fide* holder of the note, inasmuch as the debt, as collateral to which he held it originally, was paid before the action of trover was brought; that the note is subject, in his hands, to the same defences to which it would be liable if it were in the hands of Reese, and that as Reese could not recover of them upon it, so Mettler cannot. It is unnecessary to consider the question, discussed on the argu-

ment, as to whether Mettler has, in fact, any title to the note by operation of law, seeing that he has not yet satisfied the judgment in trover. If he has no title, he cannot recover at law. If it be held that his title accrued on the entry of the judgment, he obtained title after the maturity of the note, and the complainants may show, in the action at law, that the note was held by Sweeney, the secretary, in escrow merely. For this reason the injunction should be dissolved.

But there is another ground also. There is great reason to believe that the complainants' conduct towards Mettler, in regard to the note, has been such as to estop them from setting up the defence, in this court, against him. They allege that the note was held by their secretary in escrow ; that when it was delivered over by him to Mettler, they protested against such delivery. They appear to have protested to no one, except to their secretary himself, nor did they give any notice, at any time, to Mettler, that the note was subject to the defence they now set up, or, indeed, to any defence. In his affidavit to the bill, the treasurer of the company says, that he "cautioned and told Sweeney not to pass the note to Mettler, as it was against the agreement with Reese." This seems to have been the extent of the company's entire action in the matter. They made no claim upon the note while it was in the hands of Mettler, either while he held it as collateral security, or afterwards, although they knew he was holding it under a claim of right as against Reese, and as Reese's property. They permitted him, with their knowledge that he was doing so, to act upon the belief that the note was the property of Reese. Mettler called upon the treasurer of the complainants, who was also their secretary, and is the same person by whose affidavit alone their bill is verified, very soon after the suit in trover was commenced, with a view to obtaining information and evidence with which to defeat Reese in the action, and that officer, who was president when the note was given, and as such signed the note, told Mettler that the note was only payable in stock, and not in money ; and, a few days before the trial, when Mettler called on him to serve a subpœna,

upon him, requiring his attendance as a witness at the trial, he told Mettler that he had, since his former conversation with Mettler, above referred to, ascertained that he was mistaken as to the note being payable in stock, and could not swear that it was not payable in money, and that Mettler had better not call him as a witness on the trial, as he could not do him any good. The complainants have had full knowledge of Mettler's controversy with Reese, in regard to the note, and although he inquired of their treasurer, under the circumstances above stated, in regard to the existence of any defence to the note, they not only did not inform him that Reese was not entitled to the note, but, on the other hand, their treasurer told him that it was payable in stock, and afterwards, in substance, informed him that it was payable in money. The only allegation of notice to Mettler, in the bill, is in the statement that, on or about the 1st of February, 1875, he came to the treasurer of the complainants, and demanded payment of the note, and the latter informed him that the complainants were not bound to pay it in cash, and stated the arrangement, in substance, between the complainants and Reese, set forth in the bill, " which," the bill adds, ".the said Mettler knew all about." The affidavit attached to the bill contains the statement that, at the time of the trial of the action of trover, Mettler knew all about the circumstances under which the note was given, but says nothing more on that head. The answer explicitly and unqualifiedly denies all notice. The complainants are in no situation to set up in this court, against the note in Mettler's hands, the defence which they now seek to establish. They were, at least, silent when they ought to have spoken. Nor will the fact that Mettler claims title to the note through the suit in trover, debar him from the equitable consideration of this court. His title to the note is not controverted by Reese. On the other hand, Reese is seeking to compel payment of the judgment in trover, and has levied upon Mettler's property, and was proceeding to sell it when the sheriff was stayed, by injunction out of this court, on a bill filed by

Mettler, alleging illegality in the sheriff's advertisement of sale of Mettler's real estate, under the execution, and setting up the fact of the pendency of this suit, and the complainants claim therein. On the granting of that injunction, Mettler gave security, under the statute, which requires, in such cases, the deposit in this court of an amount of money equal to the amount due, at the time, on the verdict or judgment, with costs; or security, by bond, in double the amount of the verdict or judgment, and the costs at law, with condition to abide such order or decree as the Chancellor shall make in the premises; or, if the bill be dismissed, to pay the amount of the verdict or judgment, and costs, with interest. Wrong-doer, Mettler undoubtedly was in law, technically, in withholding the note from Reese, but he held it on a not unmeritorious claim of right, his design being to compel Reese, by that means, to pay him the money which he had been compelled to pay in a transaction which he regarded as merely an accommodation to Reese, and in which he considered himself entitled to indemnity from the latter accordingly. In this suit he is, under the circumstances, to be regarded as the purchaser of the note for valuable consideration, and as having title, and as being liable to defences, and entitled to protection accordingly. His bill, filed for injunction, in no wise affects his claim to the consideration of the court, on this motion. It contains no statement, nor any admission of fact, in contradiction of, or in contrariety to, any of the statements of his answer in this cause.

The injunction will be dissolved, with costs.